[Cite as *State v. Buckhanon*, 2022-Ohio-683.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff-Appellee,           :

                         No. 110127

    v.                            :

RONALD BUCKHANON,                     :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 10, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-647667-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Denise J. Salerno, Assistant Prosecuting Attorney, *for appellee.*

Thomas Rein, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Ronald Buckhanon ("Buckhanon"), appeals his sentence. He raises the following two assignments of error for our review:

> 1. The record clearly and convincingly fails to support the imposition of a maximum sentence imposed upon [Buckhanon].

2. The trial court erred by imposing an indefinite prison sentence upon [Buckhanon] which is unconstitutional.

{¶ 2} For the reasons set forth below, we affirm the trial court's judgment.

## I. Procedural History

{¶ 3} In January 2020, Buckhanon was indicted on three counts related to sexual abuse that occurred in December 2019. Counts 1 and 2 charged him with first degree-felony rape and lists the victim as D.W. (d.o.b. 10/02/2006). Count 3 charged him with gross sexual imposition, a fourth-degree felony.[1]

{¶ 4} In October 2020, Buckhanon pled guilty to all counts as indicted. The trial court referred the matter to the probation department for a presentence-investigation report ("PSI"). The matter proceeded to sentencing in November 2020. According to the police report that was included in the PSI, D.W., who was 13 years old at the time, told her grandmother and her aunt that she was raped by her mother (D.S.) and her mother's boyfriend (Buckhanon). D.W. told the police that her mother called her into her bedroom and told the victim to imitate what she did to Buckhanon. D.S. then performed oral sex on Buckhanon. D.S. instructed D.W. to do the same, and D.W. complied. D.S. instructed D.W. to take off her clothes. After she complied, D.W. said that Buckhanon touched her whole body, including her breasts and vagina. D.W. further stated that Buckhanon "touched her

---

[1] Buckhanon was indicted with codefendant, D.S., who is the victim's mother. D.S. was indicted on Counts 1-3 and also indicted for permitting child abuse of a mentally or physically handicapped person and child endangering a mentally or physically handicapped child, with a furthermore clause that the violation resulted in serious physical harm to the child. D.S. appealed to this court, challenging the constitutionality of her sentence in *State v. D.S.*, 8th Dist. Cuyahoga No. 110134.

vagina with his penis." D.S. told D.W. that she could not tell anyone because D.S. and Buckhanon would go to jail.

{¶ 5} Defense counsel stated that Buckhanon understood that he would be receiving "a lengthy prison sentence in this case," but that the court should consider the fact that Buckhanon pled guilty and accepted responsibility. Defense counsel said that he wanted to "highlight [that] this was one single event." Defense counsel told the court that Buckhanon is 45 years old and has "grandkids that he's watched," and there have never been any allegations of sexual abuse. Defense counsel stated that Buckhanon was "very sorry" for what he did to the victim. Defense counsel explained that Buckhanon had "severe problems with PCP" in 2014, and that "years of drug abuse have had some effect on his life." Defense counsel further stated that Buckhanon had not had felony convictions since 2009. Defense counsel asked for concurrent sentences.

{¶ 6} Buckhanon apologized to his family, the victim, the victim's family, and the court. He stated that he "just want[ed] to make it back so [he could] be a father to [his] children and a grandfather to [his] grandkids and be a productive member of society."

{¶ 7} The victim's grandmother spoke to the court. She stated that Buckhanon "took away her [granddaughter's] innocence." The victim's grandmother asked the court to give Buckhanon the maximum sentence.

{¶ 8} The state explained that D.W. had just turned 13 years old when Buckhanon sexually abused her. The state informed the court that D.W.'s mother

claimed that Buckhanon "indicated that, one way or another, this was going to happen, with or without her consent." The state told the court that regardless of whether that was true, Buckhanon did not take responsibility in this case or show any remorse until D.S. "stepped up" and "offered to testify in this case." The state indicated that because of that, it was difficult to find Buckhanon's remorse sincere. The state further told the court that although Buckhanon's sexual acts against D.W. took place in one day, D.W. told police that it "went on for quite a while." According to the state, "These were multiple acts, oral sex, vaginal, * * * [t]here was touching of her entire body." The state explained:

> We've already seen the impact that Mr. Buckhanon's actions had on this family[.] * * * The co-defendant is responsible for her own decisions, but now we have a 13-year-old child and several other children who have a mom that's gone for the next several years. We have [the grandmother], who now doesn't have her daughter for the next several years. It's just torn an entire family apart, and it never should have happened.

(Tr. 30-31, Nov. 12, 2020.)

{¶ 9} The state said it would defer to the family's request regarding the length of prison time that the trial court should impose.

{¶ 10} According to the PSI, Buckhanon had a lengthy criminal history that dated back to 1990, when he was a juvenile. As an adult, Buckhanon had over 20 convictions, including resisting arrest, domestic violence, violating a protection order, criminal trespassing, aggravated trespassing, robbery, burglary, criminal damaging, and many drug convictions.

{¶ 11} The trial court indicated that it had reviewed the PSI, letters from Buckhanon's family members, the principles and purposes of felony sentencing, and all the appropriate recidivism and seriousness factors. The court noted that Counts 1 and 2 were not allied because they were separate acts.

{¶ 12} The trial court explained that it considered Buckhanon's "prior domestic violence issues" and violent criminal history, which included robbery and assault cases as a juvenile. The court told Buckhanon that what he did to the victim was "a violent act." The court said that it had to "separate [Buckhanon] from society for justice, [and] to protect our community." The court explained that because of the seriousness of the offenses, it was going to impose the maximum sentence on each offense. But because the offenses occurred in "one incident," it was going to impose concurrent sentences.

{¶ 13} The trial court imposed 11 years in prison for each rape conviction and 18 months for gross sexual imposition. It ordered that all counts be served concurrent to each other, for a total of 11 years in prison. The trial court then found that Counts 1 and 2 were qualifying offenses under the Reagan Tokes Law, and notified Buckhanon that his minimum sentence would be 11 years in prison and his maximum sentence would be 16.5 years in prison. The trial court informed Buckhanon that whether he was released from prison after 11 years was up to the Ohio Department of Rehabilitation and Correction and was "based on how [he] behave[d] while in the institution." Defense counsel noted his objection to the constitutionality of the Reagan Tokes Law.

{¶ 14} The trial court also notified Buckhanon that he would be subject to a mandatory period of five years of postrelease control after he was released from prison, and of the consequences he would face for violating the terms of his postrelease control. The court further notified Buckhanon that he was classified as a Tier III sex offender, the requirements he had to follow based upon that classification, and what would occur if he failed to abide by those requirements.

{¶ 15} It is from this judgment that Buckhanon now appeals.

## II. Maximum Sentence Under R.C. 2929.12

{¶ 16} In his first assignment of error, Buckhanon contends that the "record clearly and convincingly fails to support the imposition of a maximum sentence" under R.C. 2929.12.

{¶ 17} R.C. 2953.08(G)(2) states that when reviewing felony sentences, an "appellate court's standard for review is not whether the sentencing court abused its discretion." Rather, the statute states that if we "clearly and convincingly" find that (1) "the record does not support the sentencing court's findings under" certain sentencing provisions not at issue in this case, or that (2) "the sentence is otherwise contrary to law," then we "may increase, reduce, or otherwise modify a sentence * * * or [we] may vacate the sentence and remand the matter to the sentencing court for resentencing."

{¶ 18} When sentencing a defendant, the sentencing court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 8th Dist.

Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7. A sentence is contrary to law if it falls outside the statutory range for the offense or if the sentencing court fails to consider the purposes and principles of sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12. *State v. Pawlak*, 8th Dist. Cuyahoga No. 103444, 2016-Ohio-5926, ¶ 58.

{¶ 19} Under R.C. 2929.11(A), a felony sentence shall be "reasonably calculated" to achieve the following three "overriding purposes:" (1) protect the public from future crime by the offender and others; (2) punish the offender; and (3) promote the effective rehabilitation of the offender using the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. Additionally, the imposed sentence must be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 20} R.C. 2929.12 provides the sentencing court with the discretion to determine the best way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11 when imposing a sentence. *State v. Bridges*, 8th Dist. Cuyahoga No. 107281, 2019-Ohio-1769, ¶ 10. R.C. 2929.12 sets forth a nonexhaustive list of factors a trial court must consider in determining the seriousness of the offender's conduct and the likelihood of recidivism, including: the offender's history of criminal convictions, whether the offender has responded favorably to sanctions previously imposed for criminal convictions, whether the

offender has demonstrated remorse, and any other factors relevant to achieving the purposes and principles of sentencing. R.C. 2929.12(A), (D)(2)-(3), and (D)(5).

{¶ 21} In support of his argument that the record fails to support the imposition of a maximum sentence under R.C. 2929.12, Buckhanon cites to this court's original decision in *State v. Jones*, 2016-Ohio-5923, 76 N.E.3d 417 (8th Dist.). He claims that in *Jones*, this court recognized that the Ohio Supreme Court in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, "substantially expanded the scope of appellate review of non-consecutive sentencing" and permitted appellate courts to reverse or modify a defendant's sentence if the record failed to support it under R.C. 2929.12.

{¶ 22} This court's decision in *Jones*, however, was reversed by the Ohio Supreme Court in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. The Ohio Supreme Court concluded that the foregoing language in *Marcum* was dicta and that an appellate court errs if it relies on *Marcum* and modifies or vacates a sentence "based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12." *Jones* at ¶ 27, 29.

{¶ 23} With respect to our review of a trial court's consideration of the factors set forth in R.C. 2929.12, the Ohio Supreme Court explained in *Jones*:

> R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that 'the record does not support the sentencing court's findings under' certain specified statutory provisions. But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.

* * *

R.C. 2953.08(G)(2)(b) therefore does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12.

* * *

Nothing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. In particular, R.C. 2953.08(G)(2) does not permit an appellate court to conduct a freestanding inquiry like the independent sentence evaluation [the Supreme Court] must conduct under R.C. 2929.05(A) when reviewing a death penalty-sentence.

*Id.* at ¶ 28, 39, 42.

{¶ 24} Therefore, although the trial court must "consider" the factors, "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Phillips*, 8th Dist. Cuyahoga No. 110148, 2021-Ohio-2772, ¶ 8, citing *Jones* at ¶ 20, citing *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31; *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000). The trial court is presumed to have considered the factors unless the defendant affirmatively demonstrates otherwise. *Id.*, citing *State v. Wright*, 2018-Ohio-965, 108 N.E.3d 1109, ¶ 16 (8th Dist.). Furthermore, "a trial court's statement in its sentencing journal entry that it considered the required statutory factors is alone sufficient to fulfill its obligations under R.C. 2929.11 and 2929.12." *Id.*, citing *Wright*.

{¶ 25} At the sentencing hearing in the instant case, the trial court stated that it reviewed the PSI completed on Buckhanon and read the letters from family members. The court also stated it "considered the principles and purposes of felony sentencing, all the appropriate recidivism and seriousness factors." The court then set forth its reasons for the sentence:

> So at this point, based on everything, and this is — as I told [D.S.] and as I explained to the victim in the case, [D.W.], her grandmother, I am going to explain the same thing to you, sir, this is an absolute violent act on your part. It was a betrayal by the mother. It's a violent act on your part. It's a power act. It's in character with your prior domestic violence issues.
>
> I see your prior criminal history and a couple other prior violent felonies, robbery, looks like some assault cases as a juvenile. And this is part of that — part of that character in you. This is violent. It's nothing else. It's a power assertion. You're asserting your power over [D.S.] and poor [D.W.], who is a child.
>
> And as I told [D.S] and — the only person who did the right thing in this case was [D.W.]. She did the right thing. She reported it immediately. She told her grandmother. Her grandmother did the right thing to start to deal with this. It's the only healthy way to do it. That it was not [D.W.]'s fault in any way whatsoever that the family has been plunged into this hell. It's your fault, sir, and you hold that responsibility.

(Tr. 34-35, Nov. 12, 2020.)

{¶ 26} The court further explained:

> In the meantime, though, I have to separate you from society for justice, to protect our community, and so in this case, because it's one incident, I'm going to impose concurrent sentences. So, what I — and also this is a Reagan Tokes sentence. So, the two F-1s are qualifying offenses, which will require indefinite sentences. Therefore, there will be an indefinite sentence imposed. It's mandatory prison. Because they're sex offenses, there is no presumptive early release in this matter, and there will be mandatory post-release control when you are released.

> Because of the seriousness of this and how — and the indication of the violence in your past and that you got her mother to go along with this, which is a level of manipulation and power and — that I believe a maximum sentence is appropriate.

(Tr. 36, Nov. 12, 2020.)

{¶ 27} When applying the standard set forth in R.C. 2953.08(G)(2) to the instant case, we find that Buckhanon's sentence of 11 to 16.5 years is within the statutory range. We further find that the trial court's sentence is supported by the relevant sentencing statutes. Buckhanon has an extensive prior criminal history and issues with domestic violence. His sentence protects the public and punishes the offender, without imposing an unnecessary burden on state or local government resources. Furthermore, the trial court's sentencing journal entry indicates that it "considered all required factors of the law." The court's statement in its journal entry is enough to find that the court considered the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *Phillips*, 8th Dist. Cuyahoga No. 110148, 2021-Ohio-2772, at ¶ 8, citing *Wright*, 2018-Ohio-965, 108 N.E.3d 1109 (8th Dist.).

{¶ 28} Having failed to clearly and convincingly demonstrate that the record does not support his sentence or that the sentence is contrary to law, Buckhanon's first assignment of error is overruled.

## III. Constitutionality of Reagan Tokes Law

{¶ 29} In his second assignment of error, Buckhanon contends that the indefinite part of his sentence imposed under the Reagan Tokes Law violates the

separation-of-powers doctrine and the due process clause of the United States and Ohio Constitutions.

**{¶ 30}** However, pursuant to our recent en banc decision in *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, this court has determined that Buckhanon's challenges to the Reagan Tokes Act are ripe for review and that the Act is constitutional.[2]

**{¶ 31}** Accordingly, the second assignment of error is overruled.

**{¶ 32}** Judgment is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

---

[2] As the writer of this merit panel decision, I am constrained to follow the law as determined by the close vote in the en banc majority court in *Delvallie*. However, as I expressed in my separate concurring-in-judgment-only opinion in *Delvallie* and in my dissenting opinion in the original panel decision in *State v. Gamble*, 8th Dist. Cuyahoga No. 109613, 2021-Ohio-1810, it is my view that challenges in a direct appeal under the Reagan Tokes Act are not yet ripe for review.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

EMANUELLA D. GROVES, J., CONCURS;
KATHLEEN ANN KEOUGH, J., CONCURS IN JUDGMENT ONLY

N.B. Judge Emanuella D. Groves concurred with the opinions of Judge Lisa B. Forbes (dissenting) and Judge Anita Laster Mays (concurring in part and dissenting in part) in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.